Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 09 2012, 8:32 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**DAVID W. STONE IV**
Stone Law Office & Legal Research
Anderson, Indiana

**PATTI J. TAYLOR**
Taylor Law Office
Warsaw, Indiana

ATTORNEY FOR APPELLEE:

**JAMES S. BUTTS**
Warsaw, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| SHANNAN D. DENEVE, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 43A03-1107-DR-354 |
| | ) | |
| BILLY JOE SHAMBARGER, | ) | |
| | ) | |
| Appellee. | ) | |

APPEAL FROM THE KOSCIUSKO CIRCUIT COURT
The Honorable Rex L. Reed, Judge
Cause No. 43C01-0802-DR-62

**February 9, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Shannon Deneve ("Mother") appeals the Kosciusko Circuit Court's order denying her request 1) to order Billy Jo Shambarger ("Father") to participate in counseling with their minor child, and 2) to order Father to strictly comply with the Parenting Time Guidelines. Mother also appeals the trial court's award of attorney fees to Father.

We affirm.

### Facts and Procedural History

Mother's and Father's marriage was dissolved in 2000, and one child was born to the marriage. Mother has custody of the minor child and Father has parenting time pursuant to the Indiana Parenting Time Guidelines. Both parties have remarried, and each has children born to their subsequent marriages.

In November 2010, the parties entered into an Agreed Order, which provided in pertinent part: "The parties are reminded that they are subject to previous order requiring them to strictly comply with the Indiana Parenting Time Guidelines which will be strictly enforced by this Court in the event of future conflicts." Appellant's App. p. 13. Approximately six months later, Mother filed a Motion to Enforce Prior Orders or Modify Respondent's Parenting Time, and Motion for an Order for Family Therapy. In the motion, Mother alleged that while he is exercising his parenting time, Father leaves their child with various family members during his working hours without giving Mother the right of first refusal. Mother also requested that the court order Father to participate in family therapy with Joel McArthur of McArthur Counseling Center.

2

A hearing was held on Mother's motion on June 15, 2011. After hearing the testimony of the parties and Joel McArthur, the child's therapist, the trial court issued the following findings of fact and conclusions of law:

3. That the Petitioner and Respondent were each and both reminded by Order of November 23, 2010, entered in this cause to "strictly comply" with the Indiana Parenting Time Guidelines.

4. That the term "strictly comply" with the guidelines is not defined . . . however, it is not thought to eliminate the Introductory admonition of Section I (C) of the Guidelines which provides:

Parents should recognize there will be occasions when modification of the existing parenting schedule will be necessary. Parents should exercise reasonable judgment in their dealings with each other and with their child. Parents should be flexible in scheduling parenting time and should consider the benefits to the child of frequent, meaningful and regular contact with each parent and the schedules of the child and each parent.

Nor does the term vitiate the guidance of the Preamble of the Guidelines where it states:

A child whose parents live apart has special needs related to the parent-child relationship. A child's needs and ability to cope with the parent's situation change as the child matures. Parents should consider these needs as they negotiate parenting time. They should be flexible and create a parenting time agreement which addresses the unique needs of the child and their circumstances. The Indiana Parenting Time Guidelines are designed to assist parents and courts in the development of plans and represent the minimum time a parent should have to maintain frequent, meaningful, and continuing contact with a child.

Finally the court does not interpret "strictly comply" to mean the abdication of common sense or common courtesy in dealings between parents whether they be the custodial or the non-custodial parent.

\*\*\*

6, That [Mother] failed to bear her burden of proof that the child of the parties was left with, or that the [Father] continues to leave the child of the parties with various persons including his mother, his mother-in-law, and his wife during his work hours.

7. That the evidence revealed the [Father's] mother, the paternal grandmother of the child, enjoys visiting with her granddaughter and the granddaughter enjoys visiting her grandmother as she, the grandmother,

3

battles cancer. No credible evidence of [Father] having left the minor child with his mother during his work hours was presented.

8. That evidence was presented that due to the work schedules of [Father] and his wife it is necessary for someone to be present in [Father's] home on occasion to insure the safety of the child as there is a short time gap between the time when [Father] must leave for work and when his wife, the step-mother, returns home from work. [Father's] mother-in-law provides that early morning supervision while the child sleeps. Since the period of overlap occurs very early in the morning and for fifteen (15) minutes or so no reasonable interpretation of that set of circumstances would amount to [Father] continuing to leave the minor child with various persons.

9. That . . . the child's step-mother, is a "family member" as defined in Section I(C)(3) of the Indiana Parenting Time Guidelines and for the holding in Shelton v. Shelton, 840 N.E.2d 835 (Ind. 2006).

10. That [Mother] failed to prove that either the paternal grandmother or the step-grandmother were childcare providers with the contemplation of Section I(C)(3) of the Indiana Parenting Time Guidelines.

11. That [Mother and Father] have both been ordered to comply with the Indiana Parenting Time Guidelines. [Mother] has failed to present credible evidence or satisfactorily explain why a deviation in the provisions of the Indiana Parenting Time Guidelines is necessary or appropriate in this case.

12. That [Mother] in her actions, first in arranging a secret code with the child in order that the child might report upon the activities of [Father] during his parenting time periods and second by making various unilateral decisions regarding [Father's] compliance with, or more importantly, failure to comply with the Indiana Parenting Time Guidelines by involving the Wabash County Sheriff's Department in a highly inappropriate and untimely invasion of [Father's] home, clearly has knowingly and intentionally sought to and has interfered with the child's inter-relationships with her father, her sibling in her father's home, her paternal grandmother, as well as with her step-mother.

13. That the enforcement of the Parenting Time Guidelines is not thought to be the true purpose of [Mother], rather [Mother's] sole purpose is to harass [Father] and impose her will and her view of circumstances upon [Father]. That she made no showing of any effort made by her that demonstrated a good faith attempt to achieve a resolution of her perceived problems and concerns in accordance with Section I (E)(1) and (2) of the Indiana Parenting Time Guidelines.

14. That I.C. 31-17-2-16 provides that the Court may order counseling of a child. Conceding that a custodial parent may seek counseling for a child, there does not appear to the Court to be any statute or legal authority for the custodial parent to unilaterally compel the non-custodial parent to participate in counseling or being required to accede to the selection by the

4

custodial parent of a counselor or require that the non-custodial parent participate in or be subjected to counseling not of his choosing.

15. That although [Father] filed no written response to the motions of [Mother] he did substantially prevail by first showing that he did not violate a provision of the Indiana Parenting Time Guidelines, particularly Section I (C)(3); secondly by presenting, by a preponderance of the evidence, evidence that [Mother] knowingly and intentionally interfered with his parenting time granted under the Indiana Parenting Time Guidelines in this Court's Order of November 23, 2010.

16. That the motions of [Mother] filed May 19, 2011, were frivolous and vexatious and [Father] is entitled to recover a portion of his attorney fees for resisting [Mother's] motions pursuant to the provisions of Section I (E)(6)(D) of the Indiana Parenting Time Guidelines.

Appellant's App. pp. 7-10. The trial court then denied Mother's motions and ordered her to pay Father's counsel $2000 for reasonable attorney fees "for services rendered [Father] in resisting [Mother's] motions[.]" Id. at 10-11. Mother now appeals. Additional facts will be provided as is necessary.

**Standard of Review**

When the trial court enters findings of fact sua sponte, the specific findings control only as to the issues they cover, while a general judgment standard applies to any issue upon which the court has not found. Brinkmann v. Brinkmann, 772 N.E.2d 441, 444 (Ind. Ct. App. 2002). The specific findings will not be set aside unless they are clearly erroneous, and we will affirm the general judgment on any legal theory supported by the evidence. Hanson v. Spolnik, 685 N.E.2d 71, 76 (Ind. Ct. App. 1997), trans. denied. A finding is clearly erroneous when there are no facts or inferences drawn therefrom that support it. Id. at 76–77. In reviewing the trial court's findings, we neither reweigh the evidence nor judge the credibility of the witnesses. Id. at 77. Rather, we consider only the evidence and reasonable inferences drawn therefrom that support the findings. Id.

5

Moreover, our appellate courts give "considerable deference to the findings of the trial court in family law matters" as a reflection that "the trial judge is in the best position to judge the facts, . . . to get a sense of the parents and their relationship with their children—the kind of qualities that appellate courts would be in a difficult position to assess." MacLafferty v. MacLafferty, 829 N.E.2d 938, 940 (Ind. 2005). Although the Legislature and our Supreme Court "have promulgated a series of statutes, rules, and guidelines" to bring consistency and predictability to family law decisions, the "importance of first-person observation and avoiding [familial] disruption remain compelling reasons" for the deference afforded to the trial court. Id. at 941.

### I. Father's Participation in Counseling

The trial court denied Mother's request to order Father to participate in family counseling, and in doing so, the court found:

> That I.C. 31-17-2-16 provides that the Court may order counseling of a child. Conceding that a custodial parent may seek counseling for a child, there does not appear to the Court to be any statute or legal authority for the custodial parent to unilaterally compel the non-custodial parent to participate in counseling or being required to accede to the selection by the custodial parent of a counselor or require that the non-custodial parent participate in or be subjected to counseling not of his choosing.

Appellant's App. p. 10.

In her May 19, 2011 motion, Mother requested that the trial court specifically order Father to participate in family counseling with therapist Joel McArthur. Mother unilaterally chose the therapist, and his office is more than a thirty minute drive from Father's home. Father did participate in one session with the child and spoke to McArthur on the phone several times.

6

At the hearing, Father stated he was not willing to continue in family counseling with McArthur because of the distance of his offices from Father's home, Father did not trust the therapist, and he lacked confidence in McArthur's abilities. After hearing the parties and therapist McArthur's testimony, the trial court stated:

> I'm not going to order based on what I've heard here today anybody to undergo any counseling. Do I think it would be a good idea to have a competent evaluator make a diagnosis of the young lady, yes, probably. But I'm not sure that I'm going to order that.

Tr. p. 138.

Contrary to Mother's argument on appeal, the trial court did not conclude that it did not have the authority to order Father to attend counseling sessions with the parties' child. The trial court simply found that Mother, as the custodial parent, could not unilaterally compel Father to participate in counseling with their child and a therapist of her choosing. Moreover, after considering the trial court's findings and statement at the hearing, and Father's testimony concerning his relationship with his child, we cannot conclude that the trial court abused its discretion when it rejected Mother's request to order Father to participate in family counseling.

## II. Right of First Refusal

Next, Mother argues that the trial court abused its discretion when it refused to enforce the parties' agreement to strictly comply with the parenting time guidelines. Specifically, Mother contends that she has been denied the right of first refusal when Father is at work.

7

The Indiana Parenting Time Guidelines provide: "When it becomes necessary that a child be cared for by a person other than a parent or a family member, the parent needing the child care shall first offer the other parent the opportunity for additional parenting time. The other parent is under no obligation to provide the child care. If the other parent elects to provide this care, it shall be done at no cost." The term "family member" means "'a person within the same household as the parent with physical custody.'" Shelton v. Shelton, 840 N.E.2d 835 (Ind. 2006) (quoting Shelton v. Shelton, 835 N.E.2d 513, 517 (Ind. Ct. App. 2005) (stating "[t]o that end, when the parent with physical custody or a responsible member of that parent's household cannot care for the child, the noncustodial parent is to be offered the right of first refusal regardless of whether a non-household family member can care for the child without cost")).

With respect to this issue, the trial court found that the parties' child was not cared for by anyone but Father or a family member during Father's parenting time, with one exception. Specifically,

> 6, That [Mother] failed to bear her burden of proof that the child of the parties was left with, or that the [Father] continues to leave the child of the parties with various persons including his mother, his mother-in-law, and his wife during his work hours.
> 7. That the evidence revealed the [Father's] mother, the paternal grandmother of the child, enjoys visiting with her granddaughter and the granddaughter enjoys visiting her grandmother as she, the grandmother, battles cancer. No credible evidence of [Father] having left the minor child with his mother during his work hours was presented.
> 8. That evidence was presented that due to the work schedules of [Father] and his wife it is necessary for someone to be present in [Father's] home on occasion to insure the safety of the child as there is a short time gap between the time when [Father] must leave for work and when his wife, the step-mother, returns home from work. [Father's] mother-in-law provides that early morning supervision while the child sleeps. Since the period of

overlap occurs very early in the morning and for fifteen (15) minutes or so no reasonable interpretation of that set of circumstances would amount to [Father] continuing to leave the minor child with various persons.

9. That . . . the child's step-mother, is a "family member" as defined in Section 1(C)(3) of the Indiana Parenting Time Guidelines and for the holding in <u>Shelton v. Shelton</u>, 840 N.E.2d 835 (Ind. 2006).

10. That [Mother] failed to prove that either the paternal grandmother or the step-grandmother were childcare providers with the contemplation of Section 1 (C)(3) of the Indiana Parenting Time Guidelines.

Appellant's App. pp. 8-9.

Father testified that when he is at work, the child is cared for by her stepmother, who is undoubtedly a family member as that term was defined in <u>Shelton</u>. Father also testified that there are occasions that the child spends time at her paternal grandmother's or aunt's residence because she enjoys spending time with her relatives. There was no evidence that the child was in her relatives' care because it was necessary for the child to be cared for by a person other than her Father or stepmother. And spending time with her stepmother and paternal grandmother and aunt furthers a stated goal of the Guidelines, which provides:

> To develop and maintain meaningful relationships with other significant adults (grandparents, stepparents and other relatives) as long as those relationships do not interfere with or replace the child's primary relationship with the parents.

Ind. Parenting Time Guidelines, A Child's Basic Needs (A)(8).

As the trial court found, the only time that the child is cared for by someone other than Father or stepmother during Father's parenting time is a brief period in the early morning hours. Stepmother's mother cares for the child and her half-brother after Father leaves for work and stepmother has not yet returned home from work. Given the early

9

morning hour and the short duration of time, it would be impractical to apply the right of first refusal rule in this instance.

From our review of the record, we conclude that the trial court's finding that the parties' child is not being cared for by a person other than a family member while Father is working is supported by the evidence. Mother's argument to the contrary is merely a request to reweigh the evidence and the credibility of the witnesses.

### III. Attorney Fees

Finally, Mother argues that the trial court abused its discretion when it ordered her to pay Father's attorney fees because the trial court's conclusion that her motions were frivolous and vexatious are not supported by the evidence. Concerning attorney fees, the Guidelines provide:

> In any court action to enforce an order granting or denying parenting time, a court may award reasonable attorney fees and expenses of litigation. A court may consider whether the parent seeking attorney fees substantially prevailed and whether the parent violating the order did so knowingly or intentionally. A court can also award attorney fees and expenses against a parent who pursues a frivolous or vexatious court action.

Ind. Parenting Time Guidelines § I(E)(6)(D). Indiana Code section 31-17-4-3 also provides that a court may award reasonable attorney fees in any action filed to enforce or modify an order granting or denying parenting time rights.

The trial court ordered Mother to pay Father's attorney fees after concluding that Mother's actions leading up to the filing of her motion and filing the motion to strictly enforce the Guidelines were done for the purpose of harassing Father and interfering with Father's relationship with the child. Specifically, the trial court found:

10

12. That [Mother] in her actions, first in arranging a secret code with the child in order that the child might report upon the activities of [Father] during his parenting time periods and second by making various unilateral decisions regarding [Father's] compliance with, or more importantly, failure to comply with the Indiana Parenting Time Guidelines by involving the Wabash County Sheriff's Department in a highly inappropriate and untimely invasion of [Father's] home, clearly has knowingly and intentionally sought to and has interfered with the child's inter-relationships with her father, her sibling in her father's home, her paternal grandmother, as well as with her step-mother.

13. That the enforcement of the Parenting Time Guidelines is not thought to be the true purpose of [Mother], rather [Mother's] sole purpose is to harass [Father] and impose her will and her view of circumstances upon [Father]. That she made no showing of any effort made by her that demonstrated a good faith attempt to achieve a resolution of her perceived problems and concerns in accordance with Section I (E)(1) and (2) of the Indiana Parenting Time Guidelines.

Appellant's App. pp. 9-10.

These findings are supported by the Father's testimony at the hearing. For example, on December 27, 2010, Mother told the child to call her when Father left for work. After the child called and gave Mother the prearranged code word, Mother proceeded to Father's home in an attempt to remove the child and return her to Mother's home. Mother requested assistance from the Wabash County Sherriff's Department. When the officer arrived, he spoke with Mother, stepmother, and the child. The officer did not remove the child from Father's home and return her to Mother, as Mother had requested.

Mother also places great emphasis on Father's admission that he does not provide his work schedule to Mother. But Father testified that he will not give his work schedule to Mother anymore because Father fears that Mother will repeat her actions of requesting that law enforcement officers proceed to Father's residence in an attempt to remove the

child if Mother knows that Father is at work. Tr. p. 92. And Mother's reliance on the therapist's and her own testimony to argue that her actions were not vexatious, and that her motion to enforce the Guidelines was not frivolous, is simply a request to reweigh the evidence and the credibility of the witnesses, which our court will not do.

Mother also argues that the amount of attorney fees awarded is not supported by the evidence. Father testified that he has incurred approximately $4500 dollars in attorney fees to deal with the issues raised in Mother's motion to enforce the Guidelines. The trial court admitted Father's attorney's affidavit which states that Father has incurred attorney fees in the amount of $4360.00, which is includes fees charged for responding to Mother's claims that she was denied the right of first refusal and preparation for and appearing at the hearing in this case.

For all of these reasons, we conclude that the trial court did not abuse its discretion when it ordered Mother to pay $2000 of Father's attorney fees.

### Conclusion

Concluding that the trial court did not abuse its discretion when it denied Mother's motion concerning family counseling and right of first refusal, and awarded attorney fees to Father, we affirm.

Affirmed.

FRIEDLANDER, J., and RILEY, J., concur.